IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL G. MARTIN** | : | |
| | : | |
| **Plaintiff,** | : | 3:15-CV-1620 |
| v. | : | (JUDGE MARIANI) |
| | : | |
| **THOMAS J. FINLEY, et al.** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 60) by Magistrate Judge Carlson, in which the Magistrate Judge recommends granting in part and denying in part Defendant Amil Minora's Motion to Dismiss (Doc. 22) in the above-captioned action. Defendant Minora has filed Objections (Doc. 61) to which Plaintiff has responded (Doc. 62). For the reasons that follow, upon *de novo* review of the R&R, the Court will adopt in part and overrule in part the pending R&R.

### II. ANALYSIS

#### A. Plaintiff's Claims of Malicious Prosecution and Abuse of Process

Defendant Minora first objects to Magistrate Judge Carlson's recommendation that Defendant's motion to dismiss Plaintiff's claims for malicious prosecution and abuse of process in Count III be denied. (*See* Doc. 61, at 1-6).

"The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting Restatement (Second) of Torts § 682).

> The gravamen of the misconduct for which the liability stated [under this tort] is imposed *is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings*; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.

*Id.* (quoting Restatement (Second) of Torts § 682, cmt. a) (emphasis added). To succeed on an abuse of process claim,

> the plaintiff must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . ; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)) (internal alterations omitted).

The Pennsylvania Supreme Court has characterized the distinction between abuse of process and malicious prosecution in the following manner:

> Decisions in this state and in other jurisdictions have drawn a distinction between actions for abuse of legal process and those for malicious prosecution . . . . The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. . . . "On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated other than its proper effect and execution."

*Publix Drug Co. v. Breyer Ice Cream Co.*, 32 A.2d 412, 415 (Pa. 1943) (quoting *Mayer v. Walter*, 64 Pa. 283, 285 (Pa. 1870)). Furthermore, unlike a claim for malicious prosecution, the presence or absence of probable cause is irrelevant to a claim for abuse of process nor does the plaintiff have to prove that the underlying action terminated in his favor. *Smith v. Wambaugh*, 887 F.Supp. 752, 757 (M.D. Pa. 1995).

Defendant Minora objects to Magistrate Judge Carlson's recommendation with respect to the abuse of process claim because "defendant Minora's referral of alleged criminal conduct to the appropriate authorities to investigate is not an abuse of legal process. . . ." (Doc. 61, at 6). However, in examining Plaintiff's claim of abuse of process, Magistrate Judge Carlson noted the following chain of allegations:

> Martin's complaint alleges that the defendants filed an unfounded criminal complaint against him with the District Attorney's Office and then induced the District Attorney's Office to obtain and execute search warrants on the plaintiff's bank accounts based upon false and incomplete information. The complaint then expressly alleges that the defendants attempted to use this ongoing legal process to leverage favorable civil settlement terms from Martin.

(Doc. 60, at 20-21). Defendant focuses only on the first allegations, namely the filing of a criminal complaint and the resulting search warrants. As Plaintiff admits, the "abuse of process claim began to accrue against Defendant Minora personally when Defendant Minora himself used the threat of the criminal proceedings as a means of coercing Martin to enter into a civil settlement." (Doc. 62, at 4). Thus, it is the final event, the use of the ongoing criminal investigation to leverage a favorable civil settlement, that, when applied in

3

conjunction with the prior allegations, sufficiently alleges a perversion of process; i.e. the improper use of the criminal complaint and subsequent search warrants to achieve the allegedly unlawful and unethical objective of extracting a civil settlement. As a result, the Court agrees with Magistrate Judge Carlson and will not dismiss Plaintiff's abuse of process claim at this early stage of the proceedings.

However, the Court will sustain Defendant Minora's objections with respect to the Magistrate Judge's recommendation that the malicious prosecution claim be dismissed.

Pursuant to the Restatement (Second) of Torts:

> A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if
> (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and
> (b) the proceedings have terminated in favor of the accused.

Restatement (Second) of Torts § 653. A criminal proceeding is defined as follows:

> (1) The term "criminal proceedings" includes any proceeding in which a government seeks to prosecute a person for an offense and to impose upon him a penalty of a criminal character.
> (2) Criminal proceedings are instituted when
> (a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or
> (b) without the issuance of process an indictment is returned or an information filed against him; or
> (c) he is lawfully arrested on a criminal charge.

*Id.* at § 654. Furthermore:

4

> Criminal proceedings are usually instituted by the issuance of some form of process, generally a warrant for arrest, the purpose of which is to bring the accused before a magistrate in order for him to determine whether the accused shall be bound over for further action by a grand jury or for trial by a court. The magistrate may, however, have a summary jurisdiction so that he may at the hearing dispose of the case by finding the accused either innocent or guilty. In either case, the issuance of the process constitutes the institution of the criminal proceedings. Not infrequently, however, an indictment is found by a grand jury or an information filed by a prosecuting officer without previous issuance of a warrant or other process. In these cases the return of the indictment or the filing of the information marks the institution of the proceedings. In all of these cases official action has been taken that constitutes a formal charge of criminal misconduct against the person accused.

*Id.* at § 654, cmt. c.

Pursuant to the Magistrate Judge's R&R and Defendant's Objections thereto, at issue here is whether Plaintiff's Complaint sets forth well-pleaded factual allegations which could reasonably demonstrate that "criminal proceedings" took place such that Plaintiff could prevail on his claim of malicious prosecution. As Magistrate Judge Carlson noted, the definition of "criminal proceedings" for purposes of a malicious prosecution claim "does not necessarily extend the reach of this tort to the issuance and service of search warrants, where the search does not lead to charges or an arrest." (Doc. 60, at 14). The Court agrees with the Magistrate Judge's statement, but disagrees that the allegations in the current case present an example of where the tort of malicious prosecution may be extended beyond its traditional application. Plaintiff fails to set forth any allegations that could demonstrate that "official action has been taken that constitutes a formal charge of

5

criminal misconduct against the person accused." Restatement (Second) of Torts § 654, cmt. c.

In opposition to Defendant's Objections, Plaintiff argues that "[a]ccording to both Pennsylvania precedent and the Restatement (Second) of Torts §§ 653 and 654 . . . Martin has adequately pled a malicious prosecution claim that is sufficient to withstand dismissal." (Doc. 62, at 3). Plaintiff fails to support this statement with any persuasive authority. First, Plaintiff's reliance on case law, all outside of Pennsylvania and most of which is over 100 years old (*see* Doc. 62, at 2-3), is completely unpersuasive. The fact that Plaintiff is unable to point to any case issued later than 1921 to support his position is, in and of itself, persuasive that modern Courts generally do not consider the mere issuance of a search warrant to be sufficient to establish a claim of malicious prosecution. Further, there is no question that the use of search warrants, the reasons for their procurement, the manner in which they are requested and issued, and the laws and regulations supporting their issuance, has dramatically changed in the last century. Second, the only Pennsylvania case to which Plaintiff cites, albeit only through an indirect reference to the Magistrate Judge's R&R, is *Reby v. Whalen*, a Pennsylvania Superior Court decision from 1935. (*See* Doc. 62, at 3 (referring to Magistrate Judge Carlson's brief discussion of *Reby v. Whalen*, 179 A. 879 (Pa. Super. 1935)(Doc. 60, at 14-15)). However, Magistrate Judge Carlson merely found that "the court's ruling implicitly acknowledged that the execution of a search warrant <u>may</u> be a sufficient intrusion upon a plaintiff's privacy to support a malicious

prosecution claim." (Doc. 60, at 15) (emphasis added). While the Magistrate Judge is correct that *Reby* could be read to find that the execution of a search warrant may be sufficient to establish a claim of malicious prosecution, in the last 80 years, *Reby* has only been cited by Courts three times, and never for this proposition. It is an example of an outdated outlier that Courts have declined to adopt in any subsequent decisions.

Instead, here, the Court finds persuasive the reasoning of the Pennsylvania Superior Court in *Gallucci v. Phillips & Jacobs, Inc.*, 614 A.2d 284 (Pa. Super. Ct. 1992) (*Gallucci II*). There, the Court affirmed the Philadelphia Court of Common Pleas' grant of a defendant's motion for a compulsory non-suit on a claim of malicious prosecution, finding that an investigatory subpoena issued by a grand jury did not constitute sufficient process to support a cause of action for malicious prosecution. *Id*. The Superior Court analyzed the requirements of a cause of action in malicious prosecution and subsequently applied the definition of "criminal proceedings" set forth in § 654. The Court found that:

> Applying this definition, we find that there was not sufficient process to support a cause of action in malicious prosecution. First, Richard Gallucci was not arrested. Second, no indictment was returned or information filed against Richard Gallucci. Third, no process was issued to bring Richard Gallucci before a body to determine his guilt or to determine whether to hold him for later determination of his guilt. The only process issued in this case was a records subpoena issued by the grand jury. The testimony at trial established without contradiction that the subpoena was issued as a part of the investigation. N.T. February 6, 1990, at 57-58, 74-76. A grand jury is often a body which determines whether to hold a person for later determination of guilt by deciding whether to issue an indictment. In this case, however, this was not the grand jury's function. The grand jury here merely issued a subpoena for records as a part of the investigation. There was no request of the grand jury to decide whether or not to issue an indictment. If the grand

7

jury had been asked to issue an indictment, then there would have been sufficient process because regardless of whether the indictment was returned against Richard Gallucci the grand jury would have been determining whether to hold him for a later determination of guilt.

*Id.* at 290. The Court continued on to state:

> If we were to find that an investigatory subpoena constituted sufficient process to support a cause of action for malicious prosecution, then each time law enforcement officials began an investigation a cause of action would lie. It would be impossible to determine at what point in the investigation there existed sufficient process. This would lead to an illogical and unworkable result.

*Id.* at 290-291.

Similarly, in the instant case, Plaintiff's Complaint demonstrates that no charges were ever filed against Martin, he was never arrested, no arrest warrant was ever issued nor was any other process issued to bring him before a body to determine his guilt or to determine whether to hold him for later determination of his guilt. Rather, the only process alleged by Plaintiff is the issuance and service of search warrants.

Plaintiff's request that the Court consider that the issuance and service of a search warrant, without more, constitutes the initiation of "criminal proceedings" is an attempt to expand the contours of a malicious prosecution claim well-beyond its intended scope. Instead, if a "criminal proceeding" was deemed to occur simply because law enforcement had undertaken an investigation, "it would be impossible to determine at what point in the investigation there existed sufficient process. This would lead to an illogical and unworkable result." *Gallucci II*, 614 A.2d at 291. Furthermore, this would lead to the damaging result of

8

private citizens not reporting important information to law enforcement or to other proper legal authorities lest they risk civil liability, as well as preventing law enforcement officials and prosecutors from conducting initial investigations into possible criminal conduct out of fear of a civil lawsuit being filed against them. The present case is not one where the plaintiff was charged, or the District Attorney's office even attempted to have him charged. Instead, only search warrants were issued for records that were part of an investigation. As *Gallucci II* makes clear, even if there was only a formal request by a district attorney that an indictment be issued, and that request resulted in the lack of any charges being filed, that would be sufficient to establish "criminal proceedings" because, at such a time, "the grand jury would have been determining whether to hold him for a later determination of guilt." Such is not the case here. The allegations set forth in the Complaint demonstrate that this case never proceeded beyond an initial investigation and the issuance of search warrants. This cannot be deemed sufficient to establish the fundamental element of any malicious prosecution claim, i.e. the occurrence of a "criminal proceeding."

Finally, to the extent that a subpoena does not need to meet the same constitutional safeguards as a search warrant in order to be lawful, *see e.g. Gallucci v. Phillips & Jacobs Inc.*, 1991 WL 487494, at *8 (Pa. Ct. of Com. Pl. 1991) (*Gallucci I*), this is of little import here.[1] The issuance and execution of a search warrant does implicate certain constitutional

---

[1] In *Gallucci I*, the Court of Common Pleas differentiated between a subpoena and search warrant, holding that:
> The records subpoena directed to Mr. Gallucci's employer is clearly less intrusive than a search warrant that infringes on one's expectation of privacy, and the issuance of an arrest

9

guarantees, however, the simple presence of these rights alone does not lead to the conclusion that the issuance of a search warrant must therefore be considered as an "initiation" of a "criminal proceeding." In the examples set forth by the comment in the Restatement, "official action has been taken that constitutes a formal charge of criminal misconduct against the person accused." Restatement (Second) of Torts § 654, cmt c. Plaintiff has provided no case law analogizing a search warrant to "a formal charge of criminal misconduct." Such an analogy would take the purpose of a search warrant too far.[2]

Therefore, Plaintiff's well-pleaded factual assertions demonstrate that Plaintiff's cause of action only lies in a claim for abuse of process. The Court will deny Defendant Minora's motion to dismiss the abuse of process claim, but will dismiss Plaintiff's claim of malicious prosecution.

---

> warrant that can take away a person's liberty. Because a subpoena is not regarded by the courts with the same constitutional safeguards as search warrants, we hold that the grand jury subpoena issued for the plaintiff's employment records was not a sufficient legal basis to sustain an action for malicious prosecution.

Id. at *9.

In affirming Gallucci, the Superior Court declined to address this distinction set forth by the lower Court. Instead, the Superior Court stated that a review of Pennsylvania case law revealed no case directly "determine[d] what constitutes sufficient process upon which to base a cause of action in malicious prosecution." Gallucci, 614 A.2d at 290. The Court therefore not only made clear that what constitutes sufficient process to establish a claim of malicious prosecution has not yet been clarified, but also explicitly declined to adopt the lower court's analysis. Instead, the factors relied upon by the Superior Court in affirming the lower court's dismissal of the malicious prosecution charge are easily applicable to the issuance and execution of a search warrant in the present case, i.e. lack of arrest, lack of indictment or information filed against a person, and the absence of any process issued to bring a person before a body to determine his guilt or to determine whether to hold him for later determination of his guilt.

[2] The Court further notes that to establish a malicious prosecution claim, the proceedings must have been terminated in favor of the accused. In the instant case, because the "proceedings" alleged are insufficient to satisfy the definition set forth in Section 654, the proceedings could not have "terminated" in a way which could be deemed in favor of Plaintiff. Therefore, Plaintiff's claim fails on this element as well.

10

## B. Plaintiff's Claim of Intentional Infliction of Emotional Distress

Magistrate Judge Carlson further recommends denying Defendant Minora's motion to dismiss Plaintiff's claim of intentional infliction of emotional distress ("IIED") against him.[3] In support of his recommendation, the Magistrate Judge properly sets forth the exacting standard required to make out a cognizable claim of IIED followed by citations to a number of cases wherein courts have reached seemingly irreconcilable decisions when analyzing whether a false claim of criminal conduct is sufficiently outrageous to constitute IIED, ultimately noting that "the outcomes of these cases are frequently fact-specific." (Doc. 60, at 21-25).

Defendant objects to the Magistrate Judge's conclusion, arguing that "[n]o Pennsylvania cases reflect, nor would a reasonable person find, that the reporting of allegations of wrongdoing to the appropriate authorities for investigation and alleged threats to settle a civil suit rise to the level of the type of egregious conduct which could be the basis of intentional infliction of emotional distress." (Doc. 61, at 7). However, as Magistrate Judge Carlson explained, Courts have reached varying results on this issue. Drawing every reasonable inference in favor of the plaintiff at this stage in the litigation, and without a full factual record, the Court cannot agree with the defendant's analysis at this time that his conduct does not amount to the sufficiently outrageous conduct necessary to establish a claim for IIED.

---

[3] The Magistrate Judge also recommended that Plaintiff's claim of negligent infliction of emotional distress against Minora be dismissed. No party objects to this recommendation and the Court adopts the Magistrate Judge's analysis and findings on this point.

11

In light of the allegations contained in Martin's Complaint and accepting as true the well-pleaded allegations, the Court finds that Martin's claim of IIED against Minora cannot be disposed of at this early stage of litigation. Rather, as Magistrate Judge Carlson concluded, "Martin has asserted sufficient well-pleaded facts for his claim to proceed forward, subject to later assessment of whether the undisputed material facts will support his claim under the highly exacting legal benchmarks set by Pennsylvania law." (Doc. 60, at 26). Therefore, while there is a serious question in the Court's mind as to whether Plaintiff can establish the exacting requirement of this claim, such an issue is better resolved on summary judgment.

### III. CONCLUSION

For the reasons discussed in the R&R, the Court will adopt the Magistrate Judge's determination that Defendant Minora's Motion to Dismiss be denied with respect to Plaintiff's claims of abuse of process (Count III) and intentional infliction of emotional distress (Count V). Plaintiff's claims of defamation/defamation per se/libel/false light (Count IV) and negligent infliction of emotional distress (Count V) will be dismissed for the reasons discussed in the R&R. However, we decline to adopt the Magistrate Judge's determination that Plaintiff's Complaint sets forth adequate well-pleaded facts to sustain a claim for malicious prosecution. Count III, to the extent that it addresses Plaintiff's malicious prosecution claim, will therefore be dismissed.

Robert D. Mariani
United States District Judge